IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

OSRAM GMBH and
OSRAM OPTO SEMICONDUCTORS GMBH

               Plaintiffs,

      v.

CITIZEN ELECTRONICS CO., LTD.,
and CECOL, INC.

               Defendants.

Civil Action No. 06-710-SLR

**OSRAM'S FIRST AMENDED REPLY TO COUNTERCLAIMS
OF CITIZEN ELECTRONICS CO., LTD., AND CECOL, INC.**

Counterclaim-Defendants OSRAM GmbH and OSRAM Opto Semiconductors GmbH

(collectively "OSRAM"), by and through the undersigned attorneys, hereby respond to the

similarly numbered paragraphs within the Counterclaims by Citizen Electronics, Ltd. and Cecol,

Inc. (collectively "Citizen").

**PARTIES**

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

**NATURE OF THE COUNTERCLAIMS**

5.      OSRAM admits that Citizen's counterclaims seek a declaratory judgment that

neither Citizen nor Citizen's white LED products or processes infringe, contribute to the

1

infringement of, or induce the infringement of OSRAM's intellectual property rights in the patents-in-suit and that OSRAM's intellectual property rights are invalid and unenforceable due to inequitable conduct.  OSRAM denies that these counterclaims have any merit and denies that Citizen is entitled to relief it seeks.

## JURISDICTION AND VENUE

6.      OSRAM admits the allegations contained in the first two sentences of paragraph 6.  The third sentence of paragraph 6 does not require a response by OSRAM, and OSRAM denies it on this basis.

7.      OSRAM admits that it has submitted to the jurisdiction of this Court for purposes of this case but otherwise denies the allegations of paragraph 7.

## BACKGROUND

8.      Admitted.

9.      OSRAM denies the allegations contained in the first sentence of paragraph 9. OSRAM admits the allegations contained in the second sentence of paragraph 9.

10.     OSRAM admits that the sentences from OSRAM's January 28, 2003 letter which are quoted in paragraph 10 state in full:  "We believe that CITIZEN manufactures, markets and sells white LED products incorporating a phosphor conversion technology, which makes use of our Particle Size Patents (see Enclosure 1a, 1b, 1c).  We further believe that your products, either separately or as part of other products, are offered for sale, sold and used in countries where our Particle Size Patents are in force."  OSRAM otherwise denies the allegations of paragraph 10.

11.     Admitted.

12.     Admitted.

13.     Admitted.

2

14.     Admitted.

15.     This paragraph states a legal conclusion and requires no response by OSRAM. To the extent a response is necessary, OSRAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15.

## COUNTERCLAIM COUNT I
### *Non-Infringement of the Patents-in-suit*

16.     OSRAM incorporates by reference its responses to each of the foregoing paragraphs 1-15.  OSRAM responds to defense paragraphs 1-119 in Citizen's answer on a paragraph-by-paragraph basis below, and generally denies such allegations to the extent not expressly admitted below:

## II.     OSRAM'S REPLY TO CITIZEN'S DEFENSES TO OSRAM'S COMPLAINT

1.     Denied.

2.     Denied.

3.     Denied.

4.     Denied.

### OSRAM's Reply To Citizen's Allegations Of Inequitable Conduct

5.     OSRAM admits that 37 C.F.R. § 1.56 states, in part, that "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability…." OSRAM otherwise denies the allegations of paragraph 5.

6.     OSRAM admits that 37 C.F.R. § 1.56 states, in part, that "Each individual associated with the filing and prosecution of a patent application has a duty of

candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability…." OSRAM otherwise denies the allegations of paragraph 6.

7.    OSRAM admits that 37 C.F.R. § 1.56(b)(2) states that "(b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and (2) It refutes, or is inconsistent with, a position the applicant takes in:  (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability."  OSRAM otherwise denies the allegations of paragraph 7.

8.    Admitted.

9.    OSRAM admits the allegations contained in the first sentence of paragraph 9.  OSRAM further admits that U.S. Patent No. 6,066,861 is the U.S. parent patent of the Particle Size Patents.  OSRAM otherwise denies the allegations of paragraph 9.

10.    OSRAM acknowledges that Citizen has chosen to characterize the '500, '162 and '283 patents as the "conversion patents."  OSRAM admits that U.S. Patent No. 7,078,732 is the patent that issued from the U.S. parent application to these patents but this was not the first patent in the patent family to issue.  OSRAM otherwise denies the allegations of paragraph 10.

11.    Denied.

**A.  OSRAM's Reply To Citizen's Allegations Of Inequitable Conduct Regarding The '162, '500 And '283 Conversion Patents**

**OSRAM's Reply To Citizen's Allegations That OSRAM Failed To Properly Disclose An Adverse Interference Judgment That Citizen Alleges Prohibited OSRAM's Entitlement To The Conversion Patents**

12.    OSRAM admits that OSRAM initiated an interference dispute with Nichia.  OSRAM further admits that OSRAM abandoned the interference contest and received a judgment on priority as to Count 1 of the interference against OSRAM.  OSRAM otherwise denies the allegations of paragraph 12.

**Background Regarding The OSRAM-Nichia Interference**

13.    Admitted.

14.    Admitted.

15.    OSRAM admits that an interference, as stated in MPEP § 2301, is declared to assist the Director of the United States Patent and Trademark Office in determining priority, that is, which party first invented the commonly claimed invention within the meaning of 35 U.S.C. 102(g)(1).  OSRAM otherwise denies the allegations of paragraph 15.

16.    OSRAM admits that OSRAM proposed Claim 1 or 2 of the '440 patent or claim 34 or 35 or 40 or 41 of the '727 application as the count for the interference in its April 9, 2001 request for interference.  OSRAM otherwise denies the allegations of paragraph 16.

17.    Admitted.

18.    Admitted.

19.    Admitted.

20.    Denied.

21.     OSRAM admits that all claims corresponding to the interference count included either "light diffusing particles" or "a dispersant." OSRAM otherwise denies the allegations of paragraph 21.

22.     OSRAM admits that in its April 9, 2001 request for interference, OSRAM identified claims 1-8 of the '440 patent as corresponding to the proposed count. OSRAM further admits that it stated that claims 1 and 2 corresponded exactly to the proposed count. OSRAM further admits that OSRAM stated "the remaining claims would correspond substantially to the proposed count because they describe subject matter that would be obvious in light of the respective independent claims on which they depend." OSRAM otherwise denies the allegations of paragraph 22.

23.     OSRAM admits the allegations contained in the first sentence of paragraph 23. OSRAM further admits that the PTO defined the count of the interference to be claim 1 of Nichia's '440 patent or claim 34 of the '727 application or claim 40 of the '727 application. OSRAM otherwise denies the allegations of paragraph 23.

24.     OSRAM admits that on June 25, 2002, OSRAM issued a press release stating, "On June 24, 2002 a patent dispute that Osram Opto Semiconductors GmbH and Nichia Corporation had been conducting in Japan, the USA and Europe was resolved with the signing of a patent cross licence agreement. The agreement relates to the rights to GaN / InGaN based opto-semiconductors.

The matter in question is the basic technology for the industrial manufacture of, above all, light emitting diodes and lasers made from GaN / InGaN based semiconductors and also the use of phosphor converters to generate white light in particular." OSRAM otherwise denies the allegations of paragraph 24.

25.    Upon information and belief, on or around June 25, 2002, Nichia issued a press release stating, "Nichia Corporation announced today its entrance into a patent cross license agreement with Osram Opto Semiconductors GmbH covering indium gallium nitride (InGaN) semiconductor and related packaging technology. The agreement resolves all pending patent disputes between Nichia and Osram Opto Semiconductors." OSRAM otherwise denies the allegations of paragraph 25.

26.    Admitted.

27.    OSRAM admits that on December 5, 2002, OSRAM abandoned the interference contest with respect to the count pursuant to 37 C.F.R. § 1.662(a). OSRAM otherwise denies the allegations of paragraph 27.

28.    Admitted.

29.    OSRAM admits that due to the Judgment dated December 16, 2002, Nichia retained its '440 patent, and OSRAM was not entitled to a patent containing claims 34-45 (corresponding to Count 1) of the '727 application.  OSRAM otherwise denies the allegations of paragraph 29.

30.    OSRAM admits that MPEP § 2308.03 states, in part, that "a losing party is barred on the merits from seeking a claim that would have been anticipated or rendered obvious by the subject matter of the lost count."   OSRAM further admits that when the interference was declared, it defined all of OSRAM's claims in the '727 application as corresponding to the count.  OSRAM otherwise denies the allegations of paragraph 30.

**OSRAM's Reply to Citizen's Allegations That The Interference OSRAM Lost I s Material to the '500 Patent, and Yet OSRAM Allegedly Never Disclosed it to the U.S. Patent Office**

31.    Admitted.

32.     Denied.

33.     Denied.

34.     Denied.

35.     OSRAM denies the allegations contained in the first sentence of paragraph 35.  OSRAM admits that during prosecution OSRAM filed claims broader than dependent claims 13, 25 and 26 in the application that matured into the '500 patent. OSRAM further admits that in an Office Action dated November 21, 2002, the Examiner rejected all claims except dependent claims 13, 25, and 26.  OSRAM further admits that claims 13, 25 and 26 were objected to by the Examiner as being dependent upon a rejected base claim but that the Examiner stated those claims would be allowable if rewritten in independent form including all limitations of the base claim and any intervening claims.  OSRAM further admits that claims 25 and 26 read as stated in paragraph 35.  OSRAM otherwise denies the allegations of paragraph 35.

36.     OSRAM admits that in an Office Action dated November 21, 2002, the Examiner rejected all claims except dependent claims 13, 25, and 26.  OSRAM further admits that claims 13, 25 and 26 were objected to by the Examiner as being dependent upon a rejected base claim but that the Examiner stated those claims would be allowable if rewritten in independent form including all limitations of the base claim and any intervening claims.  OSRAM further admits the allegations in the last sentence of paragraph 36.  OSRAM otherwise denies the allegations of paragraph 36.

37.     Denied.

38.     Denied.

39.     Denied.

40. OSRAM admits that issued claim 5 of the '500 patent recites, "said luminescence conversion element comprising a luminescence conversion encapsulation produced from a silicone…." OSRAM otherwise denies the allegations of paragraph 40.

41. OSRAM admits that in its April 9, 2001 request for interference, OSRAM stated, "Applicants identify claims 1-8 as corresponding to the proposed count. Independent claims 1, 2 correspond exactly to the proposed count. The remaining claims correspond substantially to the proposed count because they describe subject matter that would be obvious in light of the respective independent claims on which they depend." OSRAM otherwise denies the allegations of paragraph 41.

42. OSRAM admits that dependent claim 5 of Nichia's '440 patent states, "A light emitting device according to claim 2; wherein said molding member are made of the material selected from the group consisting of epoxy resin, urea resin and silicon resin." OSRAM otherwise denies the allegations of paragraph 42.

43. Denied.

44. OSRAM admits that in its response dated April 23, 2003, OSRAM stated, "Stevenson shows a GaN semiconductor and mentions using phosphors to change the frequency of light, but does not describe how the phosphors would be employed and does not disclose a luminescence conversion layer or encapsulation of silicone as required by claims 1 and 52, respectively. Tadatsu JP 5152609 has a gallium nitride semiconductor (with emitting peaks at 430 nm and 370 nm) and a dome-shaped molded resin encapsulation with a fluorescent dye 5 or pigment dispersed in the resin. Tadatsu thus does not disclose a luminescence conversion layer or encapsulation of silicone as

required by claims 1 and 72, respectively."  OSRAM otherwise denies the allegations of paragraph 44.

45.    OSRAM admits on May 28, 2003, the Examiner issued a Notice of Allowance.  OSRAM admits that claim 52 of the application became claim 5 of the '500 patent.  OSRAM otherwise denies the allegations of paragraph 45.

46.    Denied.

47.    OSRAM admits that claim 5 of the '500 patent includes the following limitation:    "said luminescence conversion element comprising a luminescence conversion encapsulation produced from a silicone and containing inorganic luminescence material selected from the group consisting of garnets doped with rare earths, alkaline earth metal sulfides doped with rare earths, thiogallates doped with rare earths, aluminates doped with rare earths, and orthosilicates doped with rare earths."  OSRAM further admits that a yttrium aluminum garnet (YAG) is a garnet.  OSRAM otherwise denies the allegations of paragraph 47.

48.    OSRAM admits that in its April 9, 2001 request for interference, OSRAM identified claims 1-8 of the '440 patent as corresponding to the proposed count.  OSRAM further admits that OSRAM stated that claims 1 and 2 corresponded exactly to the proposed count.  OSRAM further admits that OSRAM stated "the remaining claims would correspond substantially to the proposed count because they describe subject matter that would be obvious in light of the respective independent claims on which they depend."  OSRAM otherwise denies the allegations of paragraph 48.

49.    Denied.

50.    OSRAM admits that the application that matured into the '500 patent was filed on December 6, 2000 and that the '500 patent issued on November 2, 2004.  OSRAM further admits that judgment issued in the OSRAM-Nichia interference on December 16, 2002.  OSRAM otherwise denies the allegations of paragraph 50.

51.    OSRAM admits that OSRAM filed Information Disclosure Statements on June 5, 2003, July 3, 2003 and January 15, 2004 in the application that matured into the '500 patent.  OSRAM otherwise denies the allegations of paragraph 51.

52.    Denied.

53.    Denied.

54.    Denied.

**OSRAM's Reply to Citizen's Allegations That The Interference That Osram Lost Is Also Material To OSRAM's Other Conversion Patents, And Yet OSRAM Allegedly Did Not Properly Bring Allegedly Highly Material Information Relating To The Interference To The PTO's Attention During Prosecution**

55.    Admitted.

56.    OSRAM admits the allegations in the first sentence of paragraph 56.  OSRAM admits that claim 34 states, in part, "said luminescence conversion layer being produced from a silicone and containing inorganic luminescence material."  OSRAM otherwise denies the allegations of paragraph 56.

57.    Denied.

58.    OSRAM admits that in its April 9, 2001 request for interference, OSRAM identified claims 1-8 of the '440 patent as corresponding to the proposed count.  OSRAM further admits that OSRAM stated that claims 1 and 2 corresponded exactly to the proposed count.  OSRAM further admits that OSRAM stated "the remaining claims would correspond substantially to the proposed count because they describe subject

11

matter that would be obvious in light of the respective independent claims on which they depend." OSRAM otherwise denies the allegations of paragraph 58.

59.    OSRAM admits that dependent claim 5 of Nichia's '440 patent states, "A light emitting device according to claim 2; wherein said molding member are made of the material selected from the group consisting of epoxy resin, urea resin and silicon resin." OSRAM otherwise denies the allegations of paragraph 59.

60.    Denied.

61.    Denied.

62.    OSRAM admits that the quotation in paragraph 62 from OSRAM's September 12, 2005 submission to the PTO is accurate. OSRAM otherwise denies the allegations of paragraph 62.

63.    OSRAM admits that OSRAM disclosed "U.S. patent application serial number 09/828,727, now abandoned following a decision of the Board of Patent Appeals and Interferences" in its OSRAM's September 12, 2005 Information Disclosure Statement in the application that matured into the '283 patent. OSRAM otherwise denies the allegations of paragraph 63.

64.    Denied.

65.    Admitted.

66.    Denied.

67.    OSRAM admits that in an IDS dated September 12, 2005, OSRAM disclosed its interference against Nichia. OSRAM otherwise denies the allegations of paragraph 67.

68.    Denied.

69.    OSRAM admits that the quotation in paragraph 69 from OSRAM's September 12, 2005 submission to the PTO is accurate.  OSRAM otherwise denies the allegations of paragraph 69.

70.    OSRAM admits that OSRAM disclosed "U.S. patent application serial number 09/828,727, now abandoned following a decision of the Board of Patent Appeals and Interferences" in its OSRAM's September 12, 2005 Information Disclosure Statement in the application that matured into the '162 patent.  OSRAM otherwise denies the allegations of paragraph 70.

71.    Denied.

72.    Denied.

**OSRAM's Reply to Citizen's Allegations That OSRAM Failed To File The Settlement Agreement That Allegedly Related To The Termination Of The OSRAM-Nichia Interference**

73.    OSRAM admits that 35 U.S.C. § 135(c) states, in part, "Any agreement or understanding between parties to an interference, including any collateral agreements referred to therein, made in connection with or in contemplation of the termination of the interference, shall be in writing and a true copy thereof filed in the Patent and Trademark Office before the termination of the interference as between the said parties to the agreement or understanding.  If any party filing the same so requests, the copy shall be kept separate from the file of the interference, and made available only to Government agencies on written request, or to any person on a showing of good cause.  Failure to file the copy of such agreement or understanding shall render permanently unenforceable such agreement or understanding and any patent of such parties involved in the interference or any patent subsequently issued on any application of such parties so involved"  OSRAM otherwise denies the allegations of paragraph 73.

74.     OSRAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 74.

75.     OSRAM admits that 35 U.S.C. § 135(c) states, in part, "Any agreement or understanding between parties to an interference, including any collateral agreements referred to therein, made in connection with or in contemplation of the termination of the interference, shall be in writing and a true copy thereof filed in the Patent and Trademark Office before the termination of the interference as between the said parties to the agreement or understanding. If any party filing the same so requests, the copy shall be kept separate from the file of the interference, and made available only to Government agencies on written request, or to any person on a showing of good cause. Failure to file the copy of such agreement or understanding shall render permanently unenforceable such agreement or understanding and any patent of such parties involved in the interference or any patent subsequently issued on any application of such parties so involved"  OSRAM otherwise denies the allegations of paragraph 75.

76.     Denied.

77.     OSRAM admits that in the final judgment of OSRAM's interference with Nichia, the Board of Patent Appeals and Interferences stated "if there is a settlement agreement, attention is directed to 35 U.S.C. § 135(c) and 37 CFR § 1.661." OSRAM further admits that OSRAM did not file a settlement agreement in conjunction with the termination of OSRAM's interference with Nichia.  OSRAM otherwise denies the allegations of paragraph 77.

78.     Denied.

**OSRAM's Reply to Citizen's Allegations That OSRAM Allegedly
Mischaracterized Or Failed To Cite Allegedly Material Information Relating
To The ITC Proceedings And The '930 Patent**

79.    OSRAM admits that on or around May 6, 2004, OSRAM filed a

complaint before the ITC requesting the exclusion from entry into the United States

LEDs and products incorporating LEDs that are manufactured, sold or imported by

Dominant Semiconductors Sdn. Bhd., American Microsemiconductor, Inc, and American

Opto Plus, Inc.  OSRAM otherwise denies the allegations of paragraph 79.

80.    OSRAM admits that OSRAM asserted its '930 patent in the ITC

litigation.  OSRAM further admits that each claim of the '930 patent includes the

following limitation:  "said luminescence conversion element being formed such that the

radiation of the first wavelength range passes through said luminescence conversion

element along a plurality of paths, the plurality of paths having a substantially equal path

length inside said luminescence conversion element."  OSRAM otherwise denies the

allegations of paragraph 80.

81.    OSRAM admits that during the prosecution of the '930 patent, the

examiner rejected claims 1-12, 24, and 33 under 35 U.S.C. § 103(a) citing Stevenson

with Tadatsu and Abe; claims 1-13, 24, and 33 under 35 U.S.C. § 103(a) citing Stevenson

with Tadatsu, Abe and Thornton; claims 1-12, 14-16, 24 and 30-33 under 35 U.S.C. §

103(a) citing Stevenson with Tadatsu, Abe and Tokailin; and claims 1-51 under 35

U.S.C. § 103(a) citing Stevenson with Tadatsu, Abe, Tokailin, Mita, Chao, Robbins and

Sato.  OSRAM further admits that OSRAM stated that "Tadatsu JP 5152609 has a

gallium nitride semiconductor (with emitting peaks at 430 nm and 370 nm) and a dome-

shaped molded resin encapsulation with a fluorescent dye 5 or pigment dispersed in the

resin.  The resin mold is taller than it is wide, such that there is a longer path for the light

through the resin upward than to the sides.  Tadatsu thus does not teach substantially equal thickness, as required by claims 1 and 54."  OSRAM otherwise denies the allegations of paragraph 81.

> 82.    Denied.

> 83.    Denied.

> 84.    OSRAM admits that OSRAM did not disclose the ITC's "Initial Determination on Violation of Section 337 and Recommended Determination on Remedy and Bond", "Notice of Commission Final Determination of No Violation of Section 337 as to One Patent and Determination to Remand the Investigation as to Certain Other Patents" or "Commission Opinion" during the prosecution of the '500 patent because the '500 patent issued prior to the issuance of the aforementioned ITC determinations.  OSRAM otherwise denies the allegations of paragraph 84.

> 85.    OSRAM admits the allegations in the first sentence of paragraph 85.  OSRAM otherwise denies the allegations of paragraph 85.

> 86.    Denied.

> 87.    OSRAM admits that OSRAM disclosed Tadatsu during the prosecution of the '162 patent.  OSRAM otherwise denies the allegations of paragraph 87.

> 88.    OSRAM admits the allegations contained in the first sentence of paragraph 88.  OSRAM otherwise denies the allegations of paragraph 88.

> 89.    Denied.

**OSRAM's Reply to Citizen's Allegations That OSRAM Mischaracterized Or Failed To Cite Its "Demand For Trial"**

90.    OSRAM admits the allegations contained in the first and third sentences of paragraph 90.  OSRAM denies the second sentence of paragraph 90.

91.    OSRAM denies the allegations contained in the first and second sentences of paragraph 91.  In response to the third sentence of paragraph 91, OSRAM admits that it stated in its Demand for Trial:

While Claim 2 recites the feature that the mold member is shaped to have a lens effect and contains a diffusing member, the feature of forming the mold member in a lens shape is disclosed in A-5, A-6, A-7, A-8, A-14, A-15 and A-16.  In particular, A-8, page 3, lines 12-13 of the upper-left col. reads:  "… was coated by an epoxy resin containing a light diffusing agent made from a SiO2 powder".  A-14 discloses the feature of using a polycarbonate transparent resin as the resin for the cylindrical body 3 and mixing a light diffusing agent 7.  Further, A-16 discloses the use of a transparent epoxy resin containing titan oxide (filler member) as the mold member, which is formed in the shape of a convex lens.  The Invention according to claim 2, therefore, is known from A-5 to A-9 and A-14 and A-16 and in violation of Article 29(2) of the Law.

OSRAM otherwise denies the allegations contained in the third sentence of paragraph 91.

92.    OSRAM denies the allegations contained in the first sentence of paragraph 92.  OSRAM admits that during prosecution OSRAM filed claims broader than dependent claims 13, 25 and 26 in the application that matured into the '500 patent.  OSRAM further admits that in an Office Action dated November 21, 2002, the Examiner rejected all claims except dependent claims 13, 25, and 26.  OSRAM further admits that

claims 13, 25 and 26 were objected to by the Examiner as being dependent upon a rejected base claim but that the Examiner stated those claims would be allowable if rewritten in independent form including all limitations of the base claim and any intervening claims. OSRAM further admits that claims 25 and 26 read as stated in paragraph 92. OSRAM otherwise denies the allegations of paragraph 92.

93.    OSRAM admits that in an Office Action dated November 21, 2002, the Examiner rejected all claims except dependent claims 13, 25, and 26. OSRAM further admits that claims 13, 25 and 26 were objected to by the Examiner as being dependent upon a rejected base claim but that the Examiner stated those claims would be allowable if rewritten in independent form including all limitations of the base claim and any intervening claims. OSRAM further admits the allegations in the last sentence of paragraph 93. OSRAM otherwise denies the allegations of paragraph 93.

94.    Denied.

95.    Admitted.

96.    Denied.

97.    Denied.

98.    Denied.

**OSRAM's Reply to Citizen's Allegations That OSRAM Failed To Call the PTO's Attention To The Materiality Of The Prior Art That Allegedly Caused OSRAM to Remove All References in its European Patent To Conversion Elements in a Form Other Than a Constant Thickness Layer**

99.    OSRAM admits that EP 0807969 claims priority to the same German applications as the '930 patent but otherwise denies the allegations contained in the first sentence of paragraph 99. OSRAM denies the allegations in the second and third sentences of paragraph 99. OSRAM states that the fourth sentence of paragraph 99 is a

conclusion of law based on requirements of the European Patent Office and that no response is required, and it is otherwise denied.  OSRAM denies the allegations of the fifth sentence of paragraph 99.

100.    OSRAM admits that OSRAM cited the Shimizu reference in IDS statements filed during the prosecution of each of the '500, '162 and '283 patents. OSRAM otherwise denies the allegations of paragraph 100.

101.    Denied.

### OSRAM's Reply to Citizen's Allegations That OSRAM Falsely Claimed Priority with the '162 Patent

102.    OSRAM admits the allegations contained in the first and second sentences of paragraph 102.  OSRAM admits that German Application Serial No. 196 25 622.4 refers to luminescent dyes that are organic dyes, but otherwise denies the allegations contained in the third sentence of paragraph 102.  OSRAM denies the allegations contained in the fourth, fifth, sixth and seventh sentences of paragraph 102.

103.    Denied.

104.    Denied.

### OSRAM's Reply to Citizen's Allegations That OSRAM's Non-Asserted Conversion Patents Contain Similar Prosecution Records That Confirm the Alleged Pattern Of Misconduct Allegedly Perpetrated By OSRAM on the Patent Office

105.    OSRAM admits that the '500, '162 and '283 patents claim priority to the application that led to the '732 patent.  OSRAM otherwise denies the allegations of paragraph 105.

106.    OSRAM admits that OSRAM disclosed "U.S. patent application serial number 09/828,727, now abandoned following a decision of the Board of Patent Appeals and Interferences" in OSRAM's September 12, 2005 Information Disclosure

Statement in the application that matured into the '732 patent. OSRAM otherwise denies the allegations of paragraph 106.

    107.   Denied.

    **B.**    **OSRAM's Reply to Citizen's Allegations of Unenforceability of the '301, '247, '259, and '780 Particle Size Patents**

    108.   Denied.

    109.   OSRAM denies the allegations contained in the first sentence of paragraph 109. OSRAM admits the allegations contained in the second sentence of paragraph 109.

    110.   Denied.

    111.   Denied.

    112.   Denied.

    113.   Denied.

    114.   Denied.

    115.   Denied.

    116.   Denied.

    117.   Denied.

    118.   Denied.

    119.   OSRAM denies the allegations contained in the first and second sentences of paragraph 119. In response to the third sentence of paragraph 119, OSRAM admits that its patented technology for white LEDs is commercially important, as evidenced in part by the fact that several major companies (but not Citizen) have taken licenses to this patented technology, but otherwise denies the allegations contained in the third sentence of paragraph 119.

\*\*\*

17.     The first sentence of this paragraph states a legal conclusion and requires no response by OSRAM.  To the extent a response is necessary, OSRAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 17.  OSRAM denies the allegations contained in the second sentence of paragraph 17.

## COUNTERCLAIM COUNT II
### *Invalidity of the Patents-in-suit*

18.     OSRAM incorporates by reference its responses to each of the foregoing paragraphs 1-17 and otherwise generally denies the allegations contained in Citizen's defenses.

19.     The first sentence of this paragraph states a legal conclusion and requires no response by OSRAM.  To the extent a response is necessary, OSRAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 18.  OSRAM denies the allegations contained in the second sentence of paragraph 18.

## COUNTERCLAIM COUNT III
### *Unenforceability of the Patents-in-suit*

20.     OSRAM incorporates by reference its responses to each of the foregoing paragraphs 1-19 and otherwise generally denies the allegations contained in Citizen's defenses.

21.     The first sentence of this paragraph states a legal conclusion and requires no response by OSRAM.  To the extent a response is necessary, OSRAM states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in

the first sentence of paragraph 20.  OSRAM denies the allegations contained in the second

sentence of paragraph 20.

## PRAYER FOR RELIEF

WHEREFORE, OSRAM respectfully requests that the Court enter judgment

a.      Granting all relief requested in OSRAM's First Supplemental Complaint;

b.      Dismissing Citizen's counterclaims in their entirety with prejudice;

c.      Declaring OSRAM's patents-in-suit valid, enforceable, and infringed by Citizen;

d.      Declaring that Citizen takes nothing in this action;

e.      Declaring this case "exceptional" under 35 U.S.C. § 285 and awarding OSRAM

its attorneys' fees, costs, and expenses; and

e.      Awarding OSRAM such other and further relief as this Court deems just and

proper.

Dated:  April 5, 2007                FISH & RICHARDSON P.C.

By:  */s/ William J. Marsden, Jr.*
     William J. Marsden, Jr. (#2247)
     FISH & RICHARDSON P.C.
     919 N. Market St., Ste. 1100
     P. O. Box 1114
     Wilmington, DE 19899-1114
     Telephone:  302-652-5070
     Facsimile:  302-652-0607

     Alan D. Smith
     Charles H. Sanders
     FISH & RICHARDSON P.C.
     225 Franklin Street
     Boston, MA  02110
     Telephone:  617-542-5070
     Facsimile:  617-542-8906

Attorneys for Plaintiffs
OSRAM GmbH and OSRAM Opto Semiconductors GmbH

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2007, I electronically filed with the Clerk of Court the

**OSRAM'S FIRST AMENDED REPLY TO COUNTERCLAIMS OF CITIZEN**

**ELECTRONICS CO., LTD., AND CECOL, INC.** using CM/ECF which will send

electronic notification of such filing(s) to the following Delaware counsel.  In addition, the

filing will also be sent via hand delivery to local counsel:


Richard L. Horwitz                         Attorneys for Defendants,
David E. Moore                             Citizen Electronics Co., Ltd., and
POTTER ANDERSON & CORROON LLP              Cecol, Inc.
Hercules Plaza, 6th floor
1313 N. Market Street
Wilmington, DE 19801
Telephone:  (302) 984-6000


I hereby certify that on April 5, 2007, I have mailed by United Sates Postal Service,

the document(s) to the following non-registered participants:


Richard D. Kelly                           Attorneys for Defendants,
Steven P. Weihrouch                        Citizen Electronics Co., Ltd., and
Daniel Pereira                             Cecol, Inc.
Alexander E. Gasser
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.LC.
1940 Duke Street
Alexandria, VA  22314


                                           */s/ William J. Marsden, Jr.*
                                           William J. Marsden, Jr.